FRANCISCO ROMÁN, Plaintiff and Appellee, *v.* FRANCISCO JIMÉNEZ MERCADO ET AL., Defendants and Appellants.

No. 10911. Argued November 2, 1953.—Decided May 17, 1954.

*Buenaventura Esteves* for appellants. *B. Quiñones Elías* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

This is an appeal from a judgment rendered by the Superior Court, Aguadilla Part, ordering defendants to permit plaintiff—owner of a property which, as stated by that court, is surrounded by others belonging to different owners and having no access to any public highway—to open a road 100 meters long by 12 feet wide through a tenement belonging to the defendants. Reconsideration was requested and denied, whereupon an appeal was taken by defendants.

The evidence introduced at the trial consisted of the testimony of appellee and of one of the appellants. A sketch of the former's property was admitted in evidence, as well as

a plan of the latter's tenement from which appellee's tenement was segregated. The presiding judge of the lower court made a personal inspection of the premises, which was rightly characterized as "informal", since the necessary requirements were not met.

The judgment appealed from is based, among others, on the following findings of fact:

"3. That plaintiff acquired his property from the defendants by deed No. 96 of July 17, 1946, executed in San Sebastián, Puerto Rico, before Notary Buenaventura Esteves.

"4. That plaintiff's property is surrounded by other neighboring tenements, it being absolutely impossible to transport the crops from his tenement to a public highway.

"5. That, notwithstanding the fact that plaintiff's property adjoins a road for a stretch several meters long, it is impracticable to lay out a road there through which the crops from his property may be carried out since almost the whole crop is cut off from the public highway by a deep ditch or brook, where the cost of construction would be very great and even then it would be difficult and hazardous to transport the crops through that section. The court concludes that it is impossible to transport the crops through the place or places where plaintiff's tenement abut on the public highway.

"6. That a right of way 100 meters long by 12 (*sic*) wide is sufficient to meet the requirements of plaintiff's tenement and give access to a highway."

Relying on the foregoing findings and on the provisions of § § 500 and 503 of the Civil Code, 1930 ed., the lower court granted the right of way sought by appellee with no indemnity to appellants. The latter challenge that judgment and pray for reversal, assigning several errors, of which only the first three merit discussion. They allege that the court erred in applying the provisions of those Sections, as well as in weighing the evidence offered by the parties.

Section 500, *supra*, provides that "The owner of a tenement or property surrounded by others belonging to several owners, and having no exit to the public highways,

has right to demand the right of way through the neighboring tenements on paying the proper indemnity." That generic provision fully covers the specific provision of § 503, *supra*, according to which "When a tenement, acquired by sale, exchange or division, shall be surrounded by other tenements of the vendor, exchanger or part-owner, the latter shall be obliged to grant the right of way without indemnity, unless there is an agreement to the contrary."

The right of way referred to in those Sections, which are the equivalent of §§ 564 and 567 of the Spanish Civil Code respectively, "constitutes a servitude of a positive nature . . . ; it is the condemnation of the use of another's property . . . ," 10 Scaevola, *Código Civil*, 411, authorized to permit and facilitate the exploitation of tenements. The Supreme Court of Spain stated in its judgment of February 26, 1927 that that right "must be founded on a real need which would justify and warrant the coercion of the law with respect to the right of ownership." It follows that it may be demanded only for the benefit of *enclosed properties without access to a public highway*, which is a principal and indispensable requirement. Although those words lead one to believe that it is necessary that the property should have no access to any public highway, we wish to make it clear that the doctrine established by the commentators and adopted by this Court is that it should be deemed that it has none, not only when such is absolutely the case, but also when access is not sufficiently secure and feasible. 10 Scaevola, *Código Civil*, 412; 4 Manresa, *Código Civil*, 787; *Nin* v. *Rucadella et al.*, 28 P.R.R. 503; *Tirado* v. *Caro*, 72 P.R.R. 698, 701.

We are convinced that appellee's property is not surrounded by other tenements belonging to other owners or to appellants, and having no access to any public highway, and that is why the judgment is erroneous. It clearly appears from the evidence that it is not difficult for appellee

to transport part of the sugar-cane cultivated in his tenement. He transports it across a neighbor's land. It is stated in the findings of fact of the lower court that that property abuts on a public highway for a stretch several meters long. The court made it clear in the order denying reconsideration that it abuts on the road at two points, which is fully supported by the evidence. The evidence also shows that it has access to the highway and that appellee's problem is that, although he does have access, part of the sugar-cane can not be transported on trucks to the public highway because of a brook which runs through his property.

The trial court was of the opinion that, although appellee's tenement abuts on the public highway, "it is impracticable to lay out a road through that place by which crops can be transported from his tenement" because of the brook which runs through it, "and that it would be necessary to construct at a very high cost and even then would be difficult and hazardous" to transport through that place; and further, that "it is impossible to transport his crops through the place or places where plaintiff's tenement abuts on the public highway." However, the evidence discloses that the appellee has enough space for a road in his tenement by which, trucks may run, once the problem of the brook is solved, directly to the public highway. The problem of the brook may be solved by constructing a sewer, and the so-called impracticability of "laying out" a road through his tenement as well as the impossibility of transporting the crops, and the whole difficulty encountered in the transportation of the sugar-cane in trucks from the tenement to the highway, actually lies in the fact that he would have to construct certain works costing between $600 and $800. The trial court's finding that even though such works are constructed "it would be difficult and hazardous" to transport the cane from the point where appellee's property abuts on the public highway is not supported by any evidence. If

that finding were a consequence of the personal inspection made, we would have to disregard it because the record does not reveal the details and circumstances of the premises inspected, which would place us in a position to weigh the merits of that finding.

We have said that it should be deemed that a property has no access to a public highway not only when such is absolutely the case, but also when the access is not sufficiently secure and feasible. On this point, it is said in Manresa's Commentaries Vol. 4, pp. 787 and 788, that "a tenement which abuts on a public road by an impassable slope or declivity is virtually isolated for the purposes of the easement solicited by its owner." and further, that whether a "*river* which runs *between* a tenement and a public highway should be considered as a condition of isolation of the former," is a question which "has been debated by Laurent and has been the subject of conflicting discussions by foreign courts. . . ." and that "it is not indispensable to decide it outright," since if "the river is at all times easily wadable without hazard, it may not constitute an obstacle requiring the imposition of servitude; on any other assumption, it is." (Italics ours.)

In the case at bar, the main obstacle which prevents appellee from transporting the cane from his property to the Guajataca highway is not an inaccessible slope or unwadable stream between the former and the latter. The main obstacle is, as has been seen, the brook or deep ditch, which could be removed, as already stated, by the construction of a sewer. The evidence does not disclose that this is not feasible, much less difficult. Appellee's position is that it would cost him a sum which he does not have and he wishes to pass through appellant's property without incurring any expense other than what he would have to invest in the construction of the road, which, according to his contention, would be less than what he would have to spend if he passed

through his own property.  It is clear that appellee has been under the impression that he could secure the right of way through appellants' property by constructing a road 100 meters long by 12 feet wide which would practically divide it in two, for, in order do make its "layout" it would be necessary to destroy the sugar-cane plantings without having to pay indemnity.  This belief was ratified by the judgment appealed from. [1]  This is far from true.  As already stated, the right of way is granted without indemnity only when the property of the interested party has been acquired by sale, exchange or division, and the property is surrounded by others belonging to the vendor, exchanger or part-owner. Section 503, *supra*.  Even though appellee's tenement is surrounded by others—we have already said that it is not— it is evident that it would not be surrounded by properties belonging to the appellants within the meaning of the quoted section.[2]  It is surrounded by neighboring tenements, and the right of way could not be granted under § 500 of the Civil Code without payment of the corresponding in-

---

[1] The lower court did not expressly set forth in its judgment that appellants would not be indemnified, but such is the inference from the application of the provisions of § 503, *supra*, and this was fully ratified in the order denying reconsideration, in which it was stated that "inasmuch as plaintiff acquired his property by purchase from the defendants, under § 503 of the Civil Code the vendors are under obligation to grant the right-of-way without indemnity."

[2] According to the findings of fact, appellee's tenement has the following boundaries: "Rural: It has an area of 8½ cuerdas and is located in the ward of Aibonito of San Sebastián; it is bounded on the North by Juan Antonio Rodríguez; on the South by the main property, namely, Francisco Jiménez; on the East by Juan Antonio Rodríguez; and on the West by the heir of Gabriel Pons."

The boundaries of appellants' property are as follows: "Rural: It has an area of 8.72 cuerdas and is located in the ward of Aibonito of San Sebastián; it is bounded on the North by Francisco Román; on the South by Camino Real Guajataca; on the East by Francisco Román; and on the West by the heirs of Gabriel Pons, where it is divided by a brook."

demnity.[3] In that case appellant would have to pay for the construction of the road, plus the amount of indemnity.

▮ It has already been said that the trial court concluded that the work to be performed in order to remove the obstacle of the brook would be "at a very high cost." We find no evidence to warrant such assertion. There is no showing that the cost of that work would be excessive and immoderate. The only showing on this particular is appellee's testimony on the cost of the work, according to his estimate. As we have seen, the appellee expressed his opinion that if the road were laid out through appellants' property the expenses would be less than if it were done through his own tenement, but he did so in the belief that he was not bound to pay indemnity. Assuming however, that he was right such assumption would not by itself imply that the cost of the construction of the road through his tenement would be too costly.

Notwithstanding the fact that the right-of-way referred to in § § 500 and 503 of our Civil Code may exist as already stated, not only for the benefit of the enclosed tenements, namely, those having no access to the public highways, but also of those which have insufficient access, we are convinced that the granting of the right-of-way in the case at bar is contrary to law. "The exit is considered insufficient whenever it presents serious difficulties which could only be overcome by the construction of excessive works at a cost out of all proportion as compared with that of the property." Planiol-Ripert, *Derecho Civil Francés*, p. 770, 1942 ed. It has not been shown that those circumstances are present in the instant case.

The judgment appealed from is reversed and the complaint dismissed, with costs on appellee.

---

[3] The trial court concluded that appellee's property is surrounded by other neighboring tenements; nonetheless, as already stated, it granted the right-of-way without indemnity.